**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**


MICHAEL CAGLE JR.
ADC #113821                                                              PETITIONER


VS.                              5:03CV00406 JLH/JTR


LARRY NORRIS, Director,
Arkansas Department of Correction                                       RESPONDENT


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon

Holmes.  Any party may serve and file written objections to this recommendation.  Objections should

be specific and should include the factual or legal basis for the objection.  If the objection is to a

factual finding, specifically identify that finding and the evidence that supports your objection.  An

original and one copy of your objections must be received in the office of the United States District

Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy

will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the

right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the United States District Judge,

you must, at the same time that you file your written objections, include a "Statement of Necessity"

that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## I. Introduction

On August 28, 1998, Petitioner was sentenced to 40 years in the Arkansas Department of Correction for the first-degree murder of Chris Odom ("Odom").  In this habeas action, Petitioner challenges the constitutionality of that conviction.

The trial testimony established that Petitioner's girlfriend, Karen Castleberry ("Castleberry"), may have previously dated Odom or at least "rode around with him once." (Trial Tr. 177.) At times, Odom would call Castleberry, and Petitioner knew of their relationship.  (Trial Tr. 180.)  Once, Odom called Castleberry late at night, and Petitioner told Castleberry to inform Odom not to call late.  (Trial Tr. 182.)

On October 3, 1997,  Petitioner, Castleberry, and another person went to a pool hall in Jefferson County.  Petitioner testified that he saw Odom sitting in the pool hall, approached him, and

asked him to step outside to talk about his late night calls to Castleberry. (Trial Tr. 422-23.) Petitioner stated that, once they were outside the pool hall and talking, Odom became "real mad." (Trial Tr. 423-24.) According to Petitioner, Odom threw a punch, Petitioner threw a punch, and then they began to wrestle. (Trial Tr. 424.) During their struggle, Petitioner pulled a gun and shot Odom twice. Petitioner left the scene and was later apprehended by police. At trial, Petitioner admitted shooting Odom but testified that he did so only after Odom began to choke him, which caused Petitioner to begin to lose consciousness and fear for his life. The jury rejected Petitioner's argument that he shot Odom in self defense[1] and found him guilty of first degree murder.

Petitioner appealed his conviction to the Arkansas Court of Appeals, on the grounds that: (1) the prosecutor improperly commented on his right to remain silent; (2) the trial court improperly refused to prohibit trial spectators from wearing photos of the victim; and (3) the trial court improperly excluded evidence that, at the time of the victim's death, he had methamphetamine in his system. The Arkansas Court of Appeals rejected those arguments and affirmed Petitioner's conviction. *Cagle v. State*, 68 Ark. App. 248, 6 S.W.3d 801 (1999) ("*Cagle I*").

Petitioner then pursued post-conviction relief in the trial court, pursuant to Ark. R. Crim. P. 37. After he was denied relief, Petitioner appealed to the Arkansas Supreme Court, where he argued that: (1) his conviction was tainted with "structural error" based on an incorrect jury instruction on justification; (2) trial counsel was ineffective because he failed to object to the incorrect jury instruction on justification; (3) his constitutional right to present a defense was violated by the trial court's exclusion of evidence that the victim had methamphetamine in his system at the time of his death; (4) his trial counsel was ineffective in making his arguments for the introduction of the

---

[1]Under Arkansas law, this defense is referred to as "justification."

3

methamphetamine evidence; and (5) trial counsel was ineffective in failing to adequately develop the appellate record. The Arkansas Supreme Court rejected all of these arguments and affirmed Petitioner's conviction. *Cagle v. State*, 2002 WL 3168432 (Ark. 2002) (unpublished decision) ("*Cagle II*").

On October 27, 2003, Petitioner filed this habeas action pursuant to 28 U.S.C. § 2254. (Docket entry #1.) Respondent has filed a Response (docket entry #6), Petitioner has filed a Reply (Docket entry #10), and the issues are now joined and ready for disposition. For the reasons stated below, the Court recommends that the Petition be denied and that the case be dismissed, with prejudice.

## II.  Discussion

In support of his Petition for Writ of Habeas Corpus, Petitioner argues that: (1) the allegedly erroneous jury instruction on his defense of "justification" constituted "structural error" requiring reversal of his conviction; (2) his trial counsel's failure to object to the erroneous jury instruction on justification constituted ineffective assistance of counsel; (3) the trial court's exclusion of evidence of methamphetamine in the victim's system denied Petitioner his constitutional right to present a defense; and (4) his trial counsel's failure to adequately develop and argue the grounds allegedly supporting the admissibility of the methamphetamine evidence constituted ineffective assistance of counsel. The Court will address each of these arguments separately.

## A.  The Trial Court's Jury Instruction On Petitioner's "Justification" Defense Was "Structural Error"

Petitioner argues that the trial court gave an incorrect jury instruction on his justification defense that rose to the level of a "structural error" that requires automatic reversal. Under Arkansas

4

law, Petitioner contends that justification is not an affirmative defense, but, "rather, it is part of the reasonable doubt calculation." (Docket entry #1, p.11.) Because the "giving of an improper instruction on reasonable doubt is structural error," Petitioner argues that the trial court's erroneous instruction on "justification" violated "the due process clause of the Fourteenth Amendment and depriv[ed] [him] of a jury trial in violation of the Sixth Amendment." *Id.*

The trial court's instruction on justification, which was patterned after AMCI 2d 704 - "Justification - Use of Physical Force in Defense of a Person,"[2] advised the jury was follows:

> Michael Cagle, Jr., asserts a defense to the charge of murder in the first degree that he was defending himself. This is a defense only if: first, Michael Cagle, Jr., reasonably believed that the victim was using or was about to use unlawful physical force upon him. And, secondly, Michael Cagle only used such force which he reasonably believed to be necessary.

---

[2]AMCI 2d 704 - "Justification - Use of Physical Force in Defense of a Person" is based on the justification statute, Ark. Code Ann. § 5-2-606:

> (a) A person is justified in using physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force that he reasonably believes to be necessary. *However, he may not use deadly physical force except as provided in § 5-2-607.*
>
> (b) A person is not justified in using physical force upon another person if:
>
> (1) With purpose to cause physical injury or death to the other person, he provokes the use of unlawful physical force by the other person; or
>
> (2) He is the initial aggressor; but his use of physical force upon another person is justifiable if he in good faith withdraws from the encounter and effectively communicates to the other person his purpose to do so, and the latter continues or threatens to continue the use of unlawful physical force; or
>
> (3) The physical force involved is the product of a combat by agreement not authorized by law.

Ark. Code Ann. § 5-2-606 (emphasis added).

5

Michael Cagle would not have been justified in using physical force upon another if, with the purpose of causing physical injury or death to Chris Odom, Michael Cagle, Jr., provoked the use of unlawful physical force, or, he was the initial aggressor.

However, if you find that Michael Cagle withdrew from the encounter and effectively communicated that to the person his intent to withdraw, then Michael Cagle, Jr., is no longer the initial aggressor when the other person continued or threatened to continue the use of unlawful physical force.

And finally, "physical force," involved was the product of combat by agreement which is not authorized by law.

Michael Cagle, Jr. in asserting this defense is required only to raise a reasonable doubt in your minds.  Consequently, if you believe that this defense has been shown to exist or if the evidence leaves you with a reasonable doubt as to the guilt of murder in the first degree, then you must find him not guilty.

(Trial Tr. 488.)  The record reflects that Petitioner's trial attorney did not object to this instruction or proffer an alternative instruction.

Petitioner argues that the trial court's instruction on "justification" was erroneous because he was charged with using "deadly physical force"[3] to commit first degree murder.  Model jury

---

[3]Ark. Code Ann. § 5-2-607 governs when one is "justified" in using "deadly physical force":

(a)  A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is:
(1)  Committing or about to commit a felony involving force or violence;
(2) Using or about to use unlawful deadly physical force; or
(3) Imminently endangering his or her life or imminently about to victimize the person as described in § 9-15-103(a)(2), from the continuation of a pattern of domestic abuse. For the purposes of this section "domestic abuse" shall be that described in § 9-15-103(a).
(b) A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety:
(1) By retreating, except that a person is not required to retreat if he

6

instruction AMCI 2d 705 is specifically intended to cover that situation, *i.e.*, a defendant who alleges that he was "justified" in using "deadly physical force."

A comparison of AMCI 2d 704 and AMCI 2d 705 reveals the following:

|  | **AMCI2d 704**<br>Justification - Use of Physical Force in Defense of a Person | **AMCI2d 705**<br>Justification - Use of Deadly Physical Force in Defense of a Person |
|---|---|---|
| **When force may be used** | Defendant's reasonable belief that another is using or about to use unlawful physical force upon him | Defendant's reasonable belief that another is (1) committing or about to commit a felony with force or violence; or (2) is using or about to use unlawful deadly physical force |
| **What force may be used** | Only such force as the Defendant reasonably believes to be necessary | Deadly physical force, but only such force as the Defendant reasonably believes to be necessary[4] |

is in his dwelling and was not the original aggressor, or if he is a law enforcement officer or a person assisting at the direction of a law enforcement officer; or

(2) By surrendering possession of property to a person claiming a lawful right thereto.

[4]The introductory sentence of AMCI 2d 705 tracks the language in the justification statute governing the use of "deadly physical force" by providing the following: "*(Defendant(s))* assert(s) as a defense to the charge of *(offense(s))* that deadly physical force was necessary to defend [himself] [themselves] [or] [*(another person)*]." (emphasis in original).  However, the second bracketed element of AMCI 2d 705 expressly states that the use of deadly physical force is only a defense if "[*(Defendant(s))* only used such force as [he] [they] reasonably believed to be necessary.]" (emphasis in original).  This qualifying language regarding the level of force used does not appear in the underlying statute, Ark. Code Ann. § 5-2-607. The commentary to AMCI 2d 705 sheds no light on the requirement that the Defendant use  (presumably deadly) force that he "reasonably believes" is necessary, other than to say that "[t]he defense of using deadly physical force is only available to one who acts reasonably." *See* Comment to AMCI 2d 705 (citing *Smith v. State*, 30 Ark. App. 111, 783 S.W.2d 204 (1990) and *Barker v. State*, 21 Ark. App. 56, 728 S.W.2d 204 (1987)).

| First exception to justification | With the purpose of causing physical injury or death to another, Defendant provokes the use of unlawful physical force; or | Defendant knows that the use of deadly physical force can be avoided with complete safety by retreating; but Defendant is not required to retreat if Defendant is: (1) in his dwelling, and (2) not the original aggressor |
|---|---|---|
| Second exception to justification | Defendant is the initial aggressor, unless: (1) the Defendant withdraws from the encounter and (2) effectively communicates to the other person his intent to withdraw, then the Defendant is no longer the initial aggressor when the other person continues to use or threaten the use of unlawful physical force; or | *No mention of the role of initial aggressor, except in negating the first exception regarding the duty to retreat in the Defendant's dwelling* |
| Third exception to justification | The physical force involved is the role of combat by agreement | *No mention of the role of combat by agreement* |

During Petitioner's Rule 37 hearing, his trial attorney explained why he did not request AMCI 2d 705, or, alternatively, object to the court giving AMCI 2d 704: "[T]he only thing I can come up with is that I failed to read the jury instructions. Normally, they are prepared by the State. We make additions or deletions and I can't - I mean, this is - I just missed this." (Rule 37 Hear. Tr. at p.99.) Trial counsel then testified as to what he would have done had he realized that the deadly physical force justification instruction had not been given:

> I - basically, the way I see it, I had two opportunities to do that. Once when we approved the instructions. Had I read these things correctly, I would have offered and it would have been accepted an instruction on deadly physical force. I do believe that. Had the State argued against that, I, of course, would have proffered it. But the second time where I must have dropped the ball, was when the Judge actually

read them - the Court actually read the instructions.  Because I missed it there too.

(Rule 37 Hear. Tr. at p.99-100.)

After the trial court denied Petitioner's request for Rule 37 relief, he appealed to the Arkansas Supreme Court.  In rejecting Petitioner's "structural error" argument arising from the trial court's allegedly erroneous instruction on "justification," the Court noted that it could not reach the merits of that argument because Petitioner had failed to raise it on direct appeal.  Therefore, the Court could not consider the arguments for the first time in a Rule 37 proceeding.  *Cagle II*, 2002 WL 3168432 at *3 ("There are only three circumstances in which an issue that could have been raised on direct appeal may be raised for the first time in a Rule 37 petition: (1) when a guilty verdict is rendered by less than 12 jurors; (2) when a defendant is convicted in a court that does not have jurisdiction; and (3) when a conviction is the result of a violation of the constitutional protections against double jeopardy").

The Arkansas Supreme Court's refusal to reach the merits of this issue in *Cagle II* strongly suggests that Petitioner has procedurally defaulted the argument.[5]  However, in his Response, it is difficult to determine if Respondent is even raising procedural default as a ground for this Court to reject Petitioner's "structural error" argument.  Respondent seems to claim only that "the decision of the Supreme Court of Arkansas, ruling that the [Petitioner] had not raised the issue properly, was neither contrary to, nor an unreasonable application of, [the harmless-error analysis set forth in *Neder v. United States*, 527 U.S. 1, 9 (1999)]." (Docket entry #6, p.4.)  However, *Cagle II* involves no

---

[5] In *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001), the Court noted that "[t]he Supreme Court has recently detailed the circumstances necessary to bypass a state-law procedural default in a § 2254 petition, and "structural error" is not listed among them."

9

application, much less a mention, of the *Neder* case or harmless-error analysis.  The *Cagle II* Court simply declined to reach the merits of the "structural error" argument because jury-instruction error should have been raised on direct appeal and was not cognizable for the first time in a Rule 37 proceeding.  Thus, Respondent's argument seems to rest entirely on *Neder's* harmless error analysis. Furthermore, in making that argument, Respondent appears to acknowledge that the trial court's jury instruction on Petitioner's justification defense was erroneous.  Under these circumstances, the Court concludes that it must proceed to the merits of Petitioner's "structural error" argument, rather than raising *sua sponte* the issue of whether Petitioner has procedurally defaulted that argument.

In a habeas action, a "structural error" is one that "call[s] into question the very accuracy and reliability of the trial process and thus [is] not amenable to harmless error analysis, but require[s] automatic reversal." *Juarez v. Minnesota*, 217 F.3d 1014, *1017 (8th Cir. 2000).  However, the United States Supreme Court has identified only a handful of structural errors, one of which is a defective reasonable doubt instruction.  *Neder v. United States*, 527 U.S. 1, 8 (1999) (citing *Sullivan v. Louisiana*, 508 U.S. 275 (1993)).

Petitioner primarily relies on *Sullivan v. Louisiana*, 508 U.S. 275 (1993), to support his argument that the trial court's erroneous justification instruction was tantamount to a defective reasonable doubt instruction, thereby making it a "structural error."  In *Sullivan*, the Court held that submitting a case to a jury under a constitutionally deficient reasonable doubt instruction "vitiate[d] all the jury's findings" because the jury's verdict had not been rendered using the constitutionally required reasonable doubt standard.[6]  *Id.* at 281. Because no verdict of guilty beyond a reasonable

---

[6]In *Sullivan*, the trial court gave the jury a reasonable doubt instruction which equated "reasonable doubt" with "grave uncertainty" and "actual substantial doubt," and further required a "moral certainty" of guilt. *Sullivan*, 508 U.S. at 277.

doubt could be deemed to exist in such cases, the Court reasoned that there was nothing to weigh under the "harmless-error" analysis. Therefore, the Court concluded that such a fundamental error "unquestionably qualifies as 'structural error.'" *Id.* at 282.

In *Neder v. United States*, 527 U.S. 1 (1999), the defendant sought to expand the *Sullivan* holding to cover a situation in which the trial court had failed to submit one of the essential elements of the charged offense to the jury.[7] Neder argued that this error "prevent[ed] the jury from rendering a 'complete verdict' on every element of the offense"; thereby making it impossible to review the error under the harmless error standard contained in Fed. R. Crim. P. 52(a). *Id.* at 11. Recognizing that part of its analysis in *Sullivan* appeared to support Neder's argument, the Court concluded that "this strand of the reasoning in *Sullivan* . . . cannot be squared with our harmless-error cases." *Id.*

Citing numerous cases, the Court went on to hold that the absence of a "complete verdict" does not necessarily preclude application of the harmless-error analysis. *See id.* at 11-12 (citing cases). Because "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," the Court concluded that harmless error analysis must be applied. *See id.* at 9. Using that approach, the Court conducted a "thorough examination of the record" and determined that "no jury could reasonably find" that the defendant's false statements were not material because the record did not "contain[] evidence that could rationally lead to a contrary finding with respect to the omitted element[.]" *Id.* at 16-20. Thus, the Court held that the error in instructing on the essential elements

---

[7] In *Neder*, the defendant was charged with tax fraud, an offense which includes an element that the false statements made by the taxpayer must be material. *Neder*, 527 U.S. at 6. Over the defendant's objection, the trial court instructed the jury not to consider the materiality of any false statements made by the defendant because materiality was an issue of law for the trial court to decide. *Id.*

of the offense was harmless.

In *Mitchell v. Esparza*, 540 U.S. 12 (2003), the Court reiterated the important distinction between the jury instructions that led to a holding of "structural error" in *Sullivan* but "harmless error" in *Neder*. In the former case, the error in the reasonable doubt instruction invalidated all of the jury's findings, while the error in the latter case impacted only the finding of a single essential element of the offense. *Id.* at 16. Thus, if an erroneous jury instruction prevents a jury "from determining only one element of an offense [such as in *Neder*], . . . harmless-error review is feasible." *Id.*

In this case, Petitioner correctly points out that "justification" is an essential element of the offense of first degree murder. Under Arkansas law, "[j]ustification is not an affirmative defense which must be plead, but becomes a defense when any evidence tending to support its existence is offered to support it." *Anderson v. State*, 353 Ark. 384, 403, 108 S.W.3d 592, 604 (2003). "By statute, a justification, such as self-defense, is considered an element of the offense, and once raised, must be disproved by the prosecution beyond a reasonable doubt." *Id.* at 404, 604 (citing Ark. Code Ann. § 5-1-102(5)(C)).

Petitioner's argument becomes strained, however, in suggesting that the trial court's instruction error, which admittedly involved an element of the offense, "is part of the reasonable doubt calculation" in the same way as the erroneous reasonable doubt instruction in *Sullivan*. "[A] constitutional error is either structural or it is not." *Neder*, 527 U.S. at 14. Here, unlike the circumstances in *Sullivan*, there is no dispute that the trial court gave the jury a correct reasonable

doubt instruction.[8]   If the Court were to accept Petitioner's formulation of what constitutes "structural error," any erroneous jury instruction that did not include every essential element of a criminal offense (each of which must be proved beyond a reasonable doubt) would constitute a defective reasonable doubt instruction mandating automatic reversal.  The Court in *Neder* seemingly rejected this broad conclusion in noting that "[w]e have often applied harmless-error analysis to cases involving improper instructions on a single element of the offense."  *See Neder*, 527 U.S. at 9 (internal citations omitted).

Petitioner argues that *Neder's* harmless error analysis is only appropriate where an instruction *omits* an essential element.  In contrast, Petitioner contends that, if the instruction *misstates* an essential element of an offense, as in this case, then it constitutes a "structural error" that is governed by *Sullivan*.  However, in making this argument, Petitioner ignores well established case law holding that harmless error analysis still must be applied in cases where an essential element of an offense is *misstated*.  *See Pope v. Illinois*, 481 U.S. 497 (1987) (remanding for harmless error analysis in obscenity conviction where the jury was improperly instructed to decide whether allegedly obscene materials lacked any serious value under community standards, rather than the correct "reasonable person" standard); *United States v. Shelton*, 99 Fed. Appx. 136, 141 (9th Cir. 2004) (applying harmless error analysis where district court improperly instructed jury in bribery case that defendant need not work for a government agency directly receiving federal funding in contravention of plain statutory language and precedent requiring that agency receive federal funding); *Scoggin v. Kaiser*, 186 F.3d 1203, 1207 (10th Cir. 1999) (applying harmless error analysis where state trial court

---

[8]   The trial court instructed the jury regarding the State's burden to prove every element of the offense charged beyond a reasonable doubt, including the verbatim definition of "reasonable doubt" found at AMCI 2d 110.  (Trial Tr. at p.485-86.)

13

instructed jury on elements of petit and grand larceny under Oklahoma law rather than petit and grand larceny "of merchandise from a retailer." In this case, the trial court's jury instruction on justification, at most, impacted a finding on a single element of the offense of first degree murder. Therefore, the Court concludes that this error must be evaluated using the harmless error analysis outlined in *Neder*.[9]

The test for determining whether a constitutional error is harmless is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder*, 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Petitioner argues that the use of AMCI 2d 704, which negates justification where the defendant is the provoker or initial aggressor, cannot be characterized as an "uncontested" issue and was "devastating" to his case given the State's position that Petitioner "invited Odom outside." (Docket entry #10, p.2.) Importantly, during his testimony, Petitioner admitted that he "invited Odom outside."[10]

Petitioner's argument also seems to assume that, in a case involving justification with the use of deadly physical force, the role of the "provoker" or "aggressor" is irrelevant in establishing justification as a defense. While neither Ark. Code Ann. § 5-2-607 nor AMCI 2d 705 mention the role of the initial aggressor (except in a "home defense" case), Arkansas case law clearly recognizes

---

[9]In *Neder*, the Court held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder*, 527 U.S. at 17.

[10]According to Petitioner, however, he did so in order to talk with Odom. (Tr. 423.) But, once outside, Odom became angry, threw a punch which landed on Petitioner's right temple, and later placed him in a headlock (Tr. 424), which caused him to begin to lose consciousness. Fearing for his life, Petitioner testified that he reached for the gun in his pants, and fired twice. (Tr. 425-27.) Obviously, whether Petitioner invited Odom outside to talk or to fight was a fact question for the jury to decide.

14

that, in a justification case involving deadly physical force, the defendant must not be the aggressor.

*See Craig v. State*, 70 Ark. App. 71, 82, 14 S.W.3d 893, 900 (2000) ("A person is justified in using

deadly physical force upon another person only if he reasonably believes that the other person was

about to commit a felony involving force of violence or about to use unlawful deadly physical force

*and* he was not the initial aggressor") (emphasis added) (*citing* Ark. Code Ann. §§ 5-2- 606(b)(2)

and 5-2-607(a)(1)(2)); *Ricketts v. State*, 292 Ark. 256, 258, 729 S.W.2d 400, 402 (1987) ("One who

claims self-defense must show not only that the person killed was the aggressor, but that the accused

used all reasonable means within his power and consistent with his safety to avoid the killing").

Thus, the Court has considerable doubt concerning whether the justification instruction given in this

case, based as it was on Ark. Code Ann. § 5-2-606 and AMCI 2d 704, was an incorrect statement

of Arkansas law regarding the role of the initial aggressor, even in a justification case involving

deadly physical force.[11]

Finally, by not giving AMCI 2d 705, the trial court may have conferred a benefit on

Petitioner. The instruction that the trial court gave on justification *lowered* the threshold by

---

[11] In denying Petitioner Rule 37 relief, the trial court recognized as much in comparing AMCI 2d 704 and AMCI 2d 705. Specifically, the trial court observed that the only express mention of the role of the initial aggressor in AMCI 2d 705 involves the duty to retreat while in one's dwelling, which "[did] not appear to fit the proof adduced at the trial as accurately as do the provisions of AMCI 2d 704." (Rule 37 Tr. at p. 59.) The Court finds it extremely difficult to accept the proposition that the "provoker" and "initial aggressor" exceptions to justification embodied in Ark. Code Ann. § 5-2-606 and AMCI 2d 704 are wholly inapplicable to a case involving deadly physical force. If that were correct, a defendant claiming justification in an assault and battery case could have his justification defense negated by his role as the provoker or initial aggressor; yet a defendant in a homicide would not. On its face, such a distinction is preposterous. *See Jones v. State*, 1 Ark. App. 318, 322, 615 S.W.2d 388, 390 (1981) ("No mention of provocation is found in Ark. Stat. Ann. § 41-507 [the former codification of Ark. Code Ann. § 5-2-607] or AMCI 4105, but obviously the provocation restriction applies equally to the use of "physical force" and "deadly physical force").

15

requiring that Petitioner have only a reasonable belief that Odom was using or was about to use unlawful physical force upon him.  Under AMCI 2d 705, Petitioner would have been required to have a reasonable belief that Odom was:  (1) committing or about to commit a felony with force or violence; or (2) was using or about to use unlawful deadly physical force. Moreover, had AMCI 2d 705 been given, Petitioner could not have used deadly physical force if he knew the use of such force could have been avoided with complete safety by retreating.

After thoroughly examining the evidence in the record, the Court concludes, beyond a reasonable doubt, that any alleged error in the justification instruction did not contribute to the verdict against Petitioner.[12]  The jury heard overwhelming evidence that Petitioner was not justified in shooting Odom.  Thus, it is clear,  beyond a reasonable doubt, that a rational jury would have found Petitioner guilty even if it had been instructed under AMCI 2d 705.

**B.      Petitioner's Counsel Was Ineffective Because He Failed To Object To The Justification Instruction.**

Second, Petitioner argues that his trial attorney's failure to object to the justification instruction constituted ineffective assistance of counsel.  In *Cagle II*, the Court rejected this argument for the following reasons:

> Appellant's first claim is that trial counsel was ineffective for failing to object to a jury instruction on justification/self-defense. According to appellant, the jury was presented with the wrong instruction. In addition, appellant claims that the instruction was constitutionally defective and that this issue may be raised for the first time in a Rule

---

[12] In reaching this conclusion, the Court has also considered two other arguments made in passing by Petitioner:  (1) that the justification instruction improperly referred to Odom as a "victim"; and (2) that the "combat by agreement" portion of the instruction was improper because it departed somewhat from AMCI 2d 704 by stating:  "[F]inally, physical force was the product of combat by agreement, which was not authorized by law."  (Docket entry #1, p.9.)  Petitioner fails to cite any legal authority to support these conclusory arguments.

37 proceeding.  The trial court instructed the jury using AMCI 2d 704, Justification-Use of Physical Force in Defense of a Person. Appellant now asserts that the court should have given AMCI 2d 705, Justification-Use of Deadly Physical Force in Defense of a Person and that counsel was ineffective for not objecting to the use of AMCI 2d 704.

\*   \*   \*

According to the standard set forth in *Strickland*, appellant has made no showing that trial counsel's failure to object to the use of AMCI 2d 704 prejudiced his defense such that the outcome of his trial would have been different. In fact, appellant benefitted from the use of AMCI 2d 704 in two ways. First, AMCI 2d 704 only required appellant to show that he "reasonably believed that the victim was using or was about to use unlawful physical force upon him." Whereas, under AMCI 2d 705, appellant would have had a much higher standard of proof, i.e. that he "reasonably believed that [the victim] was committing or was about to commit [a felony], with force or violence," or that he "reasonably believed [the victim] was using or about to use unlawful deadly force." Second, AMCI 2d 705 has a duty to retreat if one is not in his own home, a requirement that is absent from AMCI 2d 704.

Although AMCI 2d 705 specifically authorizes the use of deadly force, AMCI 2d 704 did not prohibit appellant from using any "force which he reasonably believed to be necessary." The language of the instruction given by the trial court allowed for the use of deadly force if the jury found that appellant had such a belief. Not only did appellant benefit from AMCI 2d 704's lesser standards in terms of the required state of mind, the victim's level of force, and the duty to retreat, appellant retained his right to use deadly force. Appellant has made no showing of prejudice such that had his preferred instruction been given, he would have avoided conviction.

\*   \*   \*

Appellant goes on to argue that the giving of an incorrect jury instruction on justification was a structural error that may be raised for the first time in a Rule 37 proceeding. There are only three circumstances in which an issue that could have been raised on direct appeal may be raised for the first time in a Rule 37 petition: (1) when a trial is had with less than 12 jurors; (2) when a defendant is

17

convicted in a court that does not have jurisdiction; and (3) when a conviction is the result of a violation of the constitutional protections against double jeopardy. *See e.g. Davis v. State*, 345 Ark. 161, 168, 44 S.W.3d 726, 730 (2001). The giving of the instruction does not fall into one of these categories. Attacking the conviction in this manner is not appropriate in a Rule 37 proceeding. Therefore, we affirm the trial court's denial of postconviction relief on this point.

*Cagle II*, 2002 WL 31628432 *2-4.

Pursuant to 28 U.S.C. § 2254(d)(1), a habeas petition can be granted only if the state court's decision was "[1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" prong of this test, a state court's decision is "contrary to" a federal law if "the state court arrives at a conclusion opposite to that reached by this Court [the United States Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364 (2000). In *Cagle II,* the Arkansas Supreme Court unquestionably applied the correct ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668. Thus, the Court concludes that Petitioner's argument fails under the first prong of the test in § 2254(d)(1).

Next, the Court must determine if the Arkansas Supreme Court's decision to deny Petitioner's ineffective assistance of counsel argument "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 365. As previously noted, the Court in *Cagle II* held that Petitioner's failure to object to the justification instruction or proffer a different instruction did not prejudice him under the *Strickland* standard "such that the outcome of his trial would have been different." *Cagle II*, 2002 WL 31628432, *2. The same reasons that have led this Court to reject Petitioner's "structural error"

18

argument also cause it to conclude that the Arkansas Supreme Court's analysis of Petitioner's ineffective assistance of counsel argument is not "unreasonable" under the second prong of § 2254(d)(1).  Accordingly, the Court finds no merit to Petitioner's ineffective assistance of counsel argument as it relates to the trial court's instruction on justification.

**C.    The Trial Court's Exclusion Of Methamphetamine Evidence Deprived Petitioner Of A Fair Trial.**

Petitioner next argues that the trial court erred in excluding evidence that the victim, Odom, had methamphetamine in his system at the time of the shooting.  On the morning of trial, the State moved *in limine,* outside the presence of the jury, to exclude the medical examiner's testimony regarding the drugs he found in Odom's system.[13]  The trial court granted this motion because "it found that the prejudicial effect outweighed any probative value and counsel made their arguments to the Court at a pre-trial this morning prior to trial."  (Trial Tr. 336.).  Petitioner proffered the testimony of the medical examiner, who testified that amphetamine and methamphetamine were found in Odom's urine screen, and that a heart blood sample revealed methamphetamine in the amount of .24 micrograms per milliliter.  (Trial Tr. 337.)

On direct appeal, Petitioner argued that the trial court erred in excluding the methamphetamine evidence "because the victim had a powerful and dangerous drug in his system, appellant was right to be afraid for his life, and therefore was justified in killing the victim in self-defense." *Cagle I*, 68 Ark. App. at 251-52, 6 S.W.3d at 803.  The Court rejected this argument, reasoning that:

> This argument might be meritorious if there had been any evidence

---

[13]  Petitioner contends, and Respondent does not dispute, that this ruling was made off the record.

> to show that appellant knew that the victim was taking methamphetamine, or that the victim's behavior was such that appellant could reasonably have inferred the victim was under the influence of the drug. However, no such evidence appears in the record. We think that the evidence of methamphetamine in the victim's blood was only conditionally relevant to the question of appellant's state of mind and, the other conditions not having been shown, it was not error to exclude it. See Ark. R. Evid. 104(b).

*Id.*

In the Rule 37 proceedings, Petitioner argued that: (1) the exclusion of the methamphetamine evidence denied him the constitutional right to "present a defense"; (2) his counsel was ineffective in failing to argue the matter in constitutional terms; and (3) his counsel was ineffective in not presenting expert testimony concerning the effects of methamphetamine. (Rule 37 Tr. 13-16.)  At the Rule 37 hearing, Petitioner called a pharmacology expert, Dr. Kim Light, who testified that the amount of methamphetamine found in Odom's system was toxic, and that an individual who had ingested these levels of the drug would expect to show signs of methamphetamine toxicity as follows:

> Behavioral signs of methamphetamine toxicity are alertness, exaggerated alertness, confusion, anxiety, a condition we call hyperflexia which is an exaggerated reflex to a startled reflex or to an unexpected type of event, also along with that would - we would expect to see increased heart rate, increase blood pressure, agitation, what we call psycho-active agitation, aggressiveness, oftentimes violent types of aggressiveness, and in a state of confusion or fearfulness that is similar to paranoia.

(Rule 37 Tr. at p. 89.)

The trial court denied Rule 37 relief.  On appeal, Petitioner argued that "counsel was ineffective for failing to introduce the fact that the deceased was high on methamphetamine at the time of the altercation," and, alternatively, that "the failure to have this testimony admitted was a structural error because appellant was denied the 'right to present a defense.'" *Cagle II*, 2002 WL

31628432 *3-4.  The Court, in rejecting both these points, stated the following:

> Appellant also claims that counsel was ineffective for failing to introduce the fact that the deceased was high on methamphetamine at the time of the altercation. At trial, counsel attempted to introduce into evidence the testimony of Dr. William Sturner of the Arkansas State Crime Lab that at the time of his death, the victim had .24 micrograms of methamphetamine per milliliter of blood in his system. The trial court excluded the evidence, and the court of appeals affirmed. According to the court of appeals, there was no evidence that appellant knew of the victim's drug use or that drug use could have been inferred from the victim's behavior. Therefore, there was no support for appellant's argument that he was afraid for his life because of the victim's drug use. No evidence was presented at the Rule 37 hearing that appellant knew the victim was taking drugs, that such an inference could have been made based upon the victim's actions, or that appellant informed counsel of any drug use by the victim. Given that the record is void of any such evidence, appellant has failed to demonstrate that counsel's performance was deficient or that appellant was in any way prejudiced. *See Strickland, supra.* Appellant testified that the victim had thrown a punch at him, put him in a headlock, and choked him, yet the jury still chose to convict. Appellant has failed to show that the introduction of the victim's drug use would have changed the outcome of the trial. Testimony of specific acts unknown to a defendant are not directly probative of defendant's belief that he is about to encounter unlawful deadly force. *Britt v. State*, 7 Ark.App. 156, 161, 645 S.W.2d 699, 702 (1983). Therefore, we affirm the trial court's ruling on this point.

> Appellant goes on to argue that the failure to have this testimony admitted was a structural error because appellant was denied the "right to present a defense." However, this scenario does not fit into any of the three categories deemed appropriate to be raised for the first time in a Rule 37 proceeding. Therefore, we affirm the trial court's ruling on this point.

*Id.*

Petitioner argues that the exclusion of the methamphetamine evidence "was an improper restriction on [Petitioner's] right to present his defense under the federal and state constitutional guarantees of due process, fair trial, compulsory process, and confrontation." (Docket entry #1, at

21

p. 16, citing *Washington v. Texas*, 388 U.S. 14, 19, (1967) ("the right to present a defense" is a "fundamental element of due process of law"); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations"); *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) ("the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination"); *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987) (right to testify on one's own behalf at a state criminal trial is derived from the Fourteenth Amendment's due process clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's prohibition on compelled testimony); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")). Petitioner also argues that evidence of the level of methamphetamine in Odom's system was relevant to his physical condition and whether Petitioner was justified in killing him. Thus, Petitioner contends that the Court's holding in *Cagle II* is contrary to the above cited cases. (Docket entry #1, p.16-17.)

In a habeas action, it is not within the province of a federal court "to reexamine state-court determinations on state-law questions." *Johnston v. Luebbers*, 288 F.3d 1048, 1056 (8th Cir. 2002), *cert. denied*, 537 U.S. 1166 (2003) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, this Court cannot review the trial court's and the Arkansas Supreme Court's determination of state evidentiary law. *See Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998) (holding that a federal habeas court cannot "reexamine evidentiary rulings made by the trial court and affirmed by the Missouri Court of Appeals" because those rulings were based on state evidentiary law).

In contrast, a federal habeas court can review state court evidentiary rulings to determine

22

whether they constitute a constitutional violation. *Bounds*, 151 F.3d at 1119. In making this determination, a federal habeas court "must examine the totality of the circumstances and determine whether the error was so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process." *Amrine v. Bowersox*, 238 F.3d 1023, 1032-33 (8th Cir. 2001). In other words, a habeas petitioner "must show a reasonable probability that the [evidentiary] error affected the trial's outcome." *Richardson v. Bowersox,* 188 F.3d 973, 980 (8th Cir. 1999).

After careful consideration, the Court concludes that, even if this evidentiary ruling was erroneous (something that this Court seriously doubts), it was not so gross, conspicuously prejudicial, or otherwise of such magnitude, as required to constitute a due process violation. During the trial, Petitioner was allowed to present his theory of the case that Odom was the initial aggressor and that Odom was using or about to use deadly physical force against him. While Petitioner accuses the Court in *Cagle II* of erroneously finding that no evidence was presented at his Rule 37 hearing that Petitioner knew Odom was taking drugs or that such an inference could have been made based on Odom's actions, the Court concludes that this was a fair characterization of the evidence. Even taking into consideration Dr. Light's testimony regarding the behavioral effects of methamphetamine, Petitioner's testimony regarding Odom's behavior was not of such a character as to give rise to a reasonable inference that Petitioner knew or reasonably suspected that Odom was intoxicated on methamphetamine.

23

**D.**     **Petitioner's Counsel Was Ineffective In Arguing For The Admissibility Of The Methamphetamine Evidence.**

Finally, Petitioner contends that his trial counsel was ineffective because he failed: (1) to argue in constitutional terms for the introduction of the methamphetamine evidence; and (2) to proffer an expert witness to provide evidence of the effects of methamphetamine intoxication.

In *Cagle II*, the Court rejected this argument after applying the proper ineffective assistance of counsel standard found in *Strickland*. Specifically, the Court held that trial counsel's performance, in arguing for the admissibility of the methamphetamine evidence, was neither deficient nor prejudicial because there was no evidence presented at the Rule 37 hearing that Petitioner knew or could reasonably infer that Odom was taking drugs, and there was no evidence that Petitioner informed trial counsel of any drug use by Odom.  *Cagle* II, 2002 WL 31628432 *3-4.

The Court concludes that the Arkansas Supreme Court's analysis of Petitioner's ineffective assistance of counsel argument, as it relates to the trial court's exclusion of the methamphetamine evidence, is not "unreasonable" under the second prong of § 2254(d)(1).  Thus, Petitioner's final argument is without merit.

### III.   Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for Habeas Corpus under 28 U.S.C. § 2254 (docket entry #1) be DENIED, and that this case be DISMISSED, WITH PREJUDICE.

Dated this 14th day of February, 2006.

_____
UNITED STATES MAGISTRATE JUDGE